**MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.**

www.moodklaw.com

NEW JERSEY OFFICE
*Cherry Tree Corporate Center*
*Suite 501*
*535 Route 38 East*
*Cherry Hill, NJ 08002*
*(856) 663-4300 Fax: (856) 663-4439*

*Jonathan R. Stuckel*
Member NJ & PA Bars
(856) 406-1319
JStuckel@moodklaw.com

August 1, 2022

**VIA ECF**
Honorable James B. Clark, U.S.M.J.
United States Magistrate Judge
United States District of New Jersey
50 Walnut Street
Newark, NJ 07102

        **RE:**    **Zeqo, Rezart v. Selco Manufacturing Corp., and Peter Hutchinson**
                  Docket No.  2:21-cv-15240-EP-JBC
                  Our File No.:  2047-109567 (CMS/JMS)

Dear Judge Clark:

### PRELIMINARY STATEMENT

      My office represents Defendants, Selco Manufacturing Corp. and Peter Hutchinson, in the above-captioned case. We write to request a protective order pursuant to Fed. R. Civ. P. 26(c) to prohibit Plaintiff's continuous, harassing, and unduly burdensome requests for "M1 system records." For the reasons that follow, a protective order is respectfully warranted.

### ARGUMENT

**I.    BACKGROUND OF THE ALLEGATIONS AND DISCOVERY**

      This is an employment case in which Plaintiff claims that he was wrongly terminated from Defendant Selco. The complaint also alleges that Defendants, "failed to pay Plaintiff his unpaid commissions in a timely manner." *(See ECF 1, Para. 41)*. For the commission claim, it is alleged that, "Plaintiff closed several deals in the last quarter of 2020, for which he is entitled to commission pay." Id. at Para. 32.

      As for discovery, Plaintiff's original document requests to Defendants sought materials related to Plaintiff's compensation, including, "M1 reports, time sheets, invoices, paystubs, paychecks, or other **documents that Defendants themselves relied on to calculate Plaintiff's compensation**." *(See Email dated 2/17/22, **Exhibit A**)*. (emphasis added).

      Although Defendants provided initial commission discovery, supplemental discovery responses were provided on March 24, 2022. *(See Email dated 3/24/22, **Exhibit B**)*. In this

**MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C**.
Page 2

production, Defendants provided detailed sales commission reports and pay summaries related to Plaintiff for the duration of his employment. Pursuant to an email from Plaintiff's counsel to Defendants, this information was requested in an effort to support the allegation that Plaintiff, "was not paid for sales he made" to certain clients. *(Exhibit A)*.

However, Plaintiff was not satisfied with these discovery responses, and sent an email on March 25, 2022 seeking additional discovery. *(See Email dated 3/25/22, Exhibit C)*. Despite the original document request seeking commission records related to only five clients - Tap Electric, Beach Erectors, 5 Star Electric, Tc Electric, and PRI - **Plaintiff thereafter sought records relating to sixteen clients**. Id. Specifically, Plaintiff requested an "order backlog report" which it was alleged would help him "determine the amount of commissions Plaintiff alleges he is owed." Id. To be clear, by counsel for Plaintiff's own concession, Plaintiff was seeking documents in an effort to support allegations **not yet pled in the Complaint**. Id.

After multiple rounds of written discovery, the Court entered an Order on June 23, 2022 requiring both parties to provide amended discovery responses. *(See ECF 36)*. Per the Order, Defendants were required to produce "M1 system records pertaining to the sixteen (16) clients listed in footnote 2 of the letter for the time period of August 2019 - December 2021." Id. In the referenced letter and as articulated by counsel for Plaintiff at the June 23, 2022 conference with this Court, these records are needed to "capture all sales that Plaintiff made but that are not currently "assigned" to him in the M1 system." *(See ECF 35)*.

II. **DEFENDANTS' RECENT PRODUCTION COMPLIES WITH THE COURT'S LETTER ORDER**

In compliance with the Courts Letter Order, Defendants produced documents bates stamped SELCO 401-420. *(See Exhibit D)*. This production was a list generated from the M1 system and exported to excel that showed sales by salesperson for the sixteen (16) clients for the relevant time period. Id. This report shows: (1) the salesperson's invoice number; (2) customer ID; (3) invoice date; and (4) invoice total for each salesperson who had sales to these sixteen (16) clients for this period of time.

Remarkably, Plaintiff yet again attempts to further expand the scope of his discovery requests to seek all "underlying" documents concerning these sales. Specifically, Plaintiff requests a "backlog" or "sales/invoice" report from the Defendants and alleges that the Court ordered this production. To be clear, the Court's Letter Order requires the production of additional "M1 records" **but is silent as to the reports that Defendants must run and produce**. *(See ECF 36)*.

Counsel's most recent request makes clear that Plaintiff has a misguided understanding of what can be produced via the M1 system. The M1 system is sales tracking software, similar to a program like Microsoft Excel. While a number of "reports" can be run in the system, there is no report called "sales/invoice." Further, Plaintiff is misinformed concerning the information that would be contained in a "backlog" report; and uses the terms "sale," "order," and "invoice" inartfully. A "backlog" report would not show Plaintiff what orders were assigned to him. Rather, this report would show a list of orders placed but not yet fulfilled by the Defendants.

{M0182890.1}

**MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C**.
Page 3

      Notwithstanding the fact that Defendants cannot discern what Plaintiff means by "underlying" documents, the additional discovery now requested was also not contemplated by the Court's Letter Order. **To be clear, the Court ordered this production for the very specific purpose of allowing Plaintiff to cross-reference his sales with those attributed to other salespersons during his period of employment. The information which has already been produced by Defendants serves that purpose and it is respectfully requested that the Court put an end to Plaintiff's fishing expedition.**

      As a result, Defendants seek a protective order pursuant to Fed. R. Civ. P. 26(c) to shield them from Plaintiff's continuing discovery requests. Defendants have now produced 420 pages of documents **well beyond the scope of the allegations in the Complaint** and Plaintiff continues to move the goal posts and request more information after each round of production.

      Good cause exists for the entry of a protective order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. The M1 system is a vast information database and Defendants simply cannot produce every record in existence. Accordingly, Defendants ask the Court for a protective order.

      Respectfully submitted,

      **MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.**

      */s/ Jonathan R. Stuckel*
      Christian M. Scheuerman, Esquire
      Jonathan R. Stuckel, Esquire

JRS/emm
cc: Mike DiGiulio, Esquire (via ECF)

{M0182890.1}