NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| REZART ZEQO,<br><br>Plaintiff,<br><br>v.<br><br>SELCO MANUFACTURING CORP. and PETER HUTCHINSON,<br><br>Defendants. | Civil Action No. 21-15240<br><br>**OPINION**<br><br>May 13, 2024 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on Defendant Selco Manufacturing Corp. ("Selco") and Peter Hutchinson's ("Hutchinson") (collectively "Defendants") Motion for Summary Judgment and the Cross-Motion for Summary Judgment filed by Plaintiff Rezart Zeqo ("Plaintiff"). (ECF 64, 67.) The Court reviewed all submissions made in support and in opposition to the motions (ECF 65-66, 68-69), and considered the motions without oral argument pursuant to L. Civ. R. 78.1(b). For the reasons stated below, Defendant's Motion is **DENIED** and Plaintiff's motion is **GRANTED in part and DENIED in part.**

  I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

Plaintiff is a former employee of Selco, where he was hired in "mid-2019" as a Business Development Executive. (ECF 1, Compl. ¶¶ 1, 7.) During his employment, Plaintiff worked at

---

[1] The facts and procedural history are drawn from the Complaint, (ECF 1, "Compl."), Defendant's Motion for Summary Judgment (ECF 64, "Defs. MSJ"), Plaintiff's Cross Motion for Summary Judgment (ECF 67-2, Pl. Cross MSJ"), both parties' respective opposition papers (ECF 65, "Pl. Opp."; ECF 68, "Defs. Opp."), both parties' submissions regarding undisputed material facts (ECF 64-2; "Defs. SOMF"); (ECF 65-1, "Pl. Opp. SOMF"); (ECF 66-1, "Defs. SOMF Rep."); (ECF 67-3, "Pl. SOMF"); (ECF 68-1, "Defs. Opp. SOMF"), and documents integral to or relied upon by the Complaint.

Selco's headquarters in New Jersey approximately two days per week and was paid via salary and commissions. (*Id*. ¶¶ 11, 13.) On or around December 29, 2020, Hutchinson informed Plaintiff and several other employees via text message that Hutchinson had tested positive for COVID-19. (*Id.* ¶ 21; ECF 64-2, Defs. SOMF ¶ 96.) On December 30, 2020, Plaintiff responded to Hutchinson's text message:

> Not feeling so good today, woke up with a headache, itchy throat and body feeling tired. I guess I didn't kick my chair back enough when you coughed [sic] next to me during the sales meeting Pete. Im worried about my wife who has asthma, and my mother who has all sorts of health issues. I don't think you should've put everyone a[t] tisk[sic] by coming to work with all the symptoms you had last week. Dont forget you kicked me out of a meeting because I didn't have my negative test result physically even though I got tested and already had a verbal answer that I was negative. You still wanted to see it on paper, which I thought was fair. I don't think the way you handled your symptoms was fair to the rest of us, as this is not a joke, and from all our prior conversations about covid[sic] 19 this year I believe you know this better than anyone else. Feel free to call me if you want to talk about it.

(Compl. ¶ 97; *see* ECF 64-16, Ex. J.)

On January 1 and January 2, 2021, Plaintiff spoke to several of his coworkers at Selco and stated that they need to "get" Hutchinson for exposing people to COVID. (ECF 64-2, Defs. SOMF ¶¶ 98-99.) Indeed, Hutchinson received communications from "several employees" that they had received text messages and telephone calls from Plaintiff that varied from "aggressive" to "alarming" in nature. (*Id*. ¶¶ 104-08.) On January 5, 2021, Hutchinson replied to Plaintiff's December 30, 2020 text message:

> Ray – do not come to the office tomorrow. We want to keep office staff to a minimum. Lets [sic] talk tomorrow at noon.

(*Id*. ¶ 97; *See* ECF 64-16, Ex. J.) Thereafter, on January 7, 2021, Plaintiff's employment was terminated due to his "inappropriate, unprofessional, disrespectful text message . . . coupled with Plaintiff's performance being mediocre, Plaintiff trying to bully employees into being part of a

2

lynch mob against [Hutchinson], and because Plaintiff was trying to hijack the company." (ECF 64-2, Defs. SOMF ¶ 119.)

Plaintiff filed his two-count Complaint in May 2021 alleging retaliation in violation of the New Jersey Conscientious Employee Protection Act ("CEPA") and untimely payment of wages in violation of the New Jersey State Wage Payment Law ("NJWPL"). (*See* Compl. ¶¶ 34-42.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted if the movant shows that "there is no genuine issue as to any material fact [and] the moving party is entitled to a judgment as a matter of law." *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute about a material fact is

"genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23). Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.[2]

### III.  ANALYSIS

#### A.  CEPA (Count I)

Count I of Plaintiff's Complaint alleges retaliation in violation of CEPA. (ECF 1, Compl. ¶¶ 34-39; ECF 64-4, Defs. MSJ at 5.) CEPA, N.J. Stat. Ann. § 34:19-1, *et seq.*, permits a whistleblowing employee to sue an employer that retaliated against her through an adverse employment action. *Winters v. N. Hudson Reg'l Fire & Rescue*, 50 A.3d 649, 662 (N.J. 2012). New Jersey courts apply a burden-shifting[3] analysis for CEPA claims where there is no "direct

---

[2] The standard does not change when parties file cross-motions for summary judgment. When ruling on cross-motions, "the court must consider the motions independently, and view the evidence on each motion in the light most favorable to the party opposing the motion." *Morro v. DBMG Casino LLC*, 112 F. Supp. 3d 260, 276 (D.N.J. 2015) (internal citations omitted).

[3] An employment discrimination case may be advanced on either a pretext or "mixed-motives" theory. In a "mixed motives" or *Price Waterhouse* case, the employee must produce direct evidence of discrimination, i.e., more direct evidence than is required for the *McDonnell Douglas/Burdine* prima facie case. *See Texas Department of*

4

evidence of discriminatory animus."[4] *See Fleming v. Correctional Healthcare Sols., Inc.*, 751 A.2d 1035, 1041 (N.J. 2000). If a prima facie case is established, the burden shifts to the defendant to prove a legitimate, nondiscriminatory reason for instituting the employment action. Then, the burden shifts back to plaintiff to demonstrate the defendant's reason was pretext for retaliation. *Winters v. N. Hudson Reg'l Fire & Rescue*, 50 A.3d 649, 662 (N.J. 2012). To survive summary judgment, a plaintiff must "offer[] sufficient evidence for a reasonable jury to find that the employer's proffered reason for the discharge was pretextual and that retaliation[5] for the whistleblowing was the real reason for the discharge." *Blackburn v. UPS, Inc.*, 179 F.3d 81, 92-93 (3d Cir. 1999).

To prevail on a CEPA retaliation claim, a plaintiff must prove that "(1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation

---

*Community Affairs v. Burdine,* 450 U.S. 248 (1981).  If the employee does produce direct evidence of discriminatory animus, the employer must then produce evidence sufficient to show that it would have made the same decision if illegal bias had played no role in the employment decision. In short, direct proof of discriminatory animus leaves the employer only an affirmative defense on the question of "but for" cause or cause in fact. *See Starceski v. Westinghouse Electric Corp.,* 54 F.3d 1089, 1096 n.4 (3d Cir. 1995) (citations omitted). The distinction between a pretext and a mixed-motive case lies in the directness of proof of discrimination required by the plaintiff. *Starceski,* 54 F.3d at 1097. In a mixed-motive case, "direct evidence of discriminatory animus leads not only to a ready logical inference of bias, but also to a rational presumption that the person expressing bias acted on it." *Id.*

[4] Plaintiff argues that the mixed motive analysis applies here, because "Plaintiff has provided clear and direct evidence of Defendant Hutchinson's retaliatory animus – Defendant Hutchinson's sworn testimony that he fired Plaintiff for the "substance" of Plaintiff's text message complaint." (ECF 65, Pl. Opp. at 18.) However, the Court disagrees that the mixed-motive analysis applies as it is unclear based on Hutchinson's testimony that he "placed substantial negative reliance on an illegitimate criterion in reaching [his] decision." *Starceski,* 54 *F*.3d at 1096. Indeed, when asked at his deposition why he fired Plaintiff, Hutchinson responded: "because of his tone and what he said to us and what he said to me, which was completely inappropriate, unprofessional, disrespectful, and that, coupled along with other things, such as work performance being mediocre . . . and calling around and trying to bully people into being part of a lynch mob is not the type of culture that I wanted to have at our company . . . and I felt like our company was being hijacked." (ECF 64-6, Ex. A, 277:23-278:13.) As such, this Court deduces that the directness of the proof in this case is more circumstantial than Plaintiff avers and does not make it a mixed-motive case, but rather a *McDonnell Douglas* pretext case.

[5] Pursuant to N.J. Stat. Ann. § 34:19-2(e), "retaliatory action" means the discharge, suspension, or demotion of an employee. Retaliation may be reasonably inferred from the circumstances surrounding the employment action, including (a) the temporal proximity between the protected activity and the alleged retaliatory action and (b) inconsistencies or contradictions in the employer's reasoning for its action. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000)' *see also Donofry v. Autotote Sys., Inc.*, 795 A.2d 260, 270 (NJ. Super. Ct. App. Div. 2001); *Maimone v. City of Atlantic City*, 903 A.2d 1055, 1064 (N.J. 2006). Next, the employee must establish that "the employer's reason was false and that retaliation was the real reason." *Id.* (quoting *Blackburn* 179 F.3d at 92) (internal quotation marks and brackets omitted).

5

promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity . . . ; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action." *Duong v. Benihana Nat'l Corp.*, No. 21-1088, 2022 WL 1125392, at *3 n.5 (3d Cir. Apr. 15, 2022) (quoting *Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003)). Defendant argues that Plaintiff has not presented evidence to support the first, second, or fourth elements of a CEPA retaliation claim. (ECF 64-4, Defs. MSJ at 5.)

1. **Prima Facie Case**

    i. **Reasonable Belief of a Violation**

CEPA requires a good faith reasonable belief of a violation, but CEPA does not require that a plaintiff precisely identify at the time of disclosure the statute or regulation violated by the complained-of conduct. *See Mehlman v. Mobil Oil Corp.*, 707 A.2d 1000, 1015-16 (N.J. 1998). Furthermore, "[a]lthough CEPA does not require that [a] plaintiff set forth facts that, if true, would constitute a violation of [the law or public policy identified], it does require a close relationship between [his or] her claims and that [law or policy]." *Tegler v. Glob. Spectrum*, 291 F. Supp. 3d 565, 581 (D.N.J. Feb. 14, 2018) (quoting *Dzwonar*, 828 A.2d at 903). "A plaintiff who brings a claim pursuant to N.J.S.A. 34:19–3c need not show that his or her employer or another employee actually violated the law or a clear mandate of public policy . . . Instead, the plaintiff simply must show that he or she 'reasonably believes' that to be the case." *Tegler v. Glob. Spectrum*, 291 F. Supp. 3d 565, 581 (D.N.J. Feb. 14, 2018) (quoting *Dzwonar*, 828 A.2d at 903); *see also Robert v. Autopart Int'l*, No. 14-07266, 2015 WL 4031740, at *2 (D.N.J. June 30, 2015) (internal citations omitted). While "the trial court must identify a statute, regulation, rule, or public policy that closely

relates to the complained-of conduct," the plaintiff need not "allege facts that, if true, actually would violate that statute, rule, or public policy." *Dzwonar*, 828 A.2d at 903.

> In other words, when a defendant requests that the trial court determine as a matter of law that a plaintiff's belief was not objectively reasonable, the trial court must make a threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff. If the trial court so finds, the jury then must determine whether the plaintiff actually held such a belief and, if so, whether that belief was objectively reasonable.

*Id.* at 901; *see also Fischer v. G4S Secure Sols. USA, Inc.*, 614 F. App'x 87, 92 (3d Cir. 2015).[6]

Here, Defendants argue that Plaintiff did not possess an objectively good faith reasonable belief that Hutchinson's conduct violated the law. (ECF 64-4, Defs. MSJ at 6-9.) Defendants ask the Court to make this conclusion as a matter of law. The Court declines to do so. Indeed, as discussed above, the Court is required to determine as a matter of law, whether Plaintiff has identified violations of a statute, rule, or public policy and to assess whether a substantial nexus between the conduct and the law exists. Plaintiff has identified, and the Court agrees, that the nexus does exist. The law that Plaintiff claims he reasonably believed was violated was Governor Murphy's Executive Order 192, which mandated health and safety protocols for public and private sector workplaces in order to protect employees from the COVID-19 pandemic.[7] The Court finds, accepting the evidence of Hutchinson's misconduct as true, that the evidence would support a finding that Plaintiff was reporting conduct that would be a violation of Executive Order 192. Once

---

[6] "To survive a summary judgment motion, a plaintiff bringing a CEPA claim must establish a prima facie case by demonstrating that (1) he reasonably believed that his employer's conduct was violating a law or rule or regulation promulgated pursuant to law, (2) he objected to the conduct, (3) an adverse employment action was taken against him, and (4) a causal connection exists between the whistleblowing activity and the adverse employment action." *Fischer v. G4S Secure Sols. USA, Inc.*, 614 F. App'x 87, 92 (3d Cir. 2015) (quoting *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 404 (3d Cir. 2007)).

[7] Peter Hutchinson issued a memo to all employees on October 30, 2020, stating: "Per Governor Murphy's Executive Order 192, all employees must follow health and safety protocols that will serve and protect in-person workforces. The order mandates that as of 6:00 AM on November 5th, all employers at a minimum, require individuals at the worksite to 'maintain at least six (6) feet of distance from others to the maximum extent possible and require employees and visitors to wear masks when entering the worksite, subject to certain limited exceptions'. Please help keep us all safe by following these guidelines. Thank you." (ECF 64-11, Ex. F.)

the Court has found that Plaintiff identified a law, statute, or public policy that would be violated if the reported concerns were true and that a substantial nexus between the law and the reported conduct exists from which a belief in such violation could reasonably be found, it is for the jury to determine whether Plaintiff has demonstrated that she actually held such a belief and, if so, whether that belief was objectively reasonable. *See Dzwonar*, 828 A.2d at 901. In the context of a summary judgment motion where the Court has made the objective predicate finding of a nexus between the misconduct reported by Plaintiff and the violation of a given law, rule, or public policy, it then becomes necessary to determine whether there are material facts in dispute regarding the remaining elements of the CEPA claim, namely whether the Plaintiff actually held such a belief and whether that belief was objectively reasonable. *See Tegler*, 291 F. Supp. at 583. The circumstances here give rise to the possibility that Plaintiff reasonably believed he was reporting violations of Executive Order 192 in furtherance of Selco Manufacturing's COVID-19 Interoffice Memo and Protocols. (ECF 64-11, Ex. F; ECF 64-12, Ex. G; ECF 67-2, Pl. Cross MSJ at 12-14.)

      The Court finds that the evidence allows a reasonable finder of fact to conclude that Plaintiff could reasonably have believed that Hutchinson had violated Executive Order 192 and the referenced internal policies based upon Plaintiff's own experience of texting Hutchinson regarding Hutchinson's testing positive for COVID-19 on December 29, 2020. (ECF 64-2 ¶¶ 96-97; ECF 67-3, Pl. Opp. SOMF ¶¶ 14, 17-21.) A reasonable juror could conclude that Plaintiff's stated concerns to Hutchinson were made in good faith and were objectively reasonable based upon Executive Order 192 and the Interoffice Memo issued from Hutchinson regarding COVID-19 issued just two months prior in October of 2020. "The object of CEPA is not to make lawyers out of conscientious employees but rather to prevent retaliation against those employees who object to employer conduct that they reasonably believe to be unlawful[.]" *Mehlman,* 707 A.2d

1000, 1015-16. Both Defendants' Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment will therefore be denied based on the foregoing.

### ii. Whistleblowing Activity

Defendants next argue that "Plaintiff cannot satisfy the second prima facie element of CEPA because he did not engage in any of the three "whistleblowing activities." (ECF 64-4, Defs. MSJ at 9.) The Court disagrees. As described in N.J. Stat. Ann. § 34:19–3,

> An employer shall not take any retaliatory action against an employee because the employee does any of the following: (a) Discloses, or threatens to disclose to a supervisor . . . an activity, policy or practice of the employer . . . that the employee reasonably believes . . . is in violation of a law . . . ; or . . . (c) Objects to . . . any activity, policy or practice which the employee reasonably believes . . . is in violation of a law. . . or is incompatible with a clear mandate of public policy concerning the public health, safety or welfare[.]

Defendants contend that Plaintiff's text did not qualify as "reporting" a violation of a law or regulation because Hutchinson already reported himself and because "Plaintiff himself facilitated the violation of COVID-19 protocols when he failed to wear a mask and was physically close to others on December 24th." (ECF 64-4, Defs. MSJ at 10; ECF 64-2, Defs. SOMF ¶¶ 85-94.) Defendant's contention is misplaced. Plaintiff is not disputing the fact that Hutchinson informed certain employees about his positive COVID-19 test via text on December 29, 2020. Rather, Plaintiff's December 30, 2020 text was an objection to how Hutchinson allegedly failed to apply Executive Order 192 and the internal Selco COVID-19 policies to himself while Hutchinson was "exhibiting COVID-19 symptoms." (ECF 65, Pl. Opp. at 6-7; *see* ECF 65-1, Pl. Opp. SOMF ¶¶ 159-63.)

9

### iii. Adverse Employment Action

The parties do not dispute that Plaintiff has put forth evidence to support the third element of the prima facie claim, i.e., that he was subjected to an adverse employment action because he was terminated on January 7, 2021. (ECF 65-1, Pl. Opp. SOMF ¶ 118.)

### iv. Causal Connection

CEPA requires that Plaintiff demonstrate a causal connection between the whistleblowing activities and an adverse employment action. *See Dzwonar*, 828 A.2d at 901. Defendants argue that Plaintiff is unable to prove a causal link between his report to Hutchinson (i.e., the substance of the texts from Plaintiff to Hutchinson) and his termination as "any link was superseded by Plaintiff's own vindictive actions." (ECF 64-4, Defs. MSJ at 12.) The Court disagrees. It is undisputed that Plaintiff texted Hutchinson regarding his concerns pertaining to COVID-19 on December 30, 2020. (ECF 64-2, Defs. SOMF ¶ 97.) It is further undisputed that Plaintiff was then terminated from his employment on January 7, 2021, just one week later. (*Id*. ¶ 118.) Here, the temporal proximity, the surrounding circumstances of Plaintiff's termination, the proffered reasons from Defendants regarding Plaintiff's termination, and the substance of his text messages with Hutchinson raise a genuine issue of material fact as to causation.[8] While the timing of Plaintiff's termination is relevant, "[i]t is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997).

---

[8] Plaintiffs need not present direct evidence of causation to prevail on a CEPA claim of unlawful retaliation. *See Maimone v. City of Atlantic City*, 903 A.2d 1055, 1064 (N.J. 2006). A jury may make a finding of causation "based solely on circumstantial evidence that the person ultimately responsible for an adverse employment action was aware of an employee's whistle-blowing activity." *Id.* Temporal proximity of a plaintiff's whistle-blowing activity and alleged retaliatory conduct is circumstantial evidence "that may support an inference of a causal connection." *Id*.

Upon review of the evidentiary record, the Court finds that a reasonable finder of fact could rationally conclude that circumstantial evidence, including the one-week gap between December 30, 2020, and January 7, 2021, supports a conclusion that Plaintiff's escalation of his complaints to Hutchinson played a substantial role (i.e., were causally related) to Hutchinson's decision to terminate him. This is sufficient evidence to allow Plaintiff to make out the fourth element, and therefore his prima facie case, of retaliation under CEPA.

### 2. Legitimate, Non-Retaliatory Reason for Discharge & Pretext

Finally, Defendants argue that Plaintiff will not be able to sustain his burden to prove pretext. Again, the Court disagrees.

> Once the employee has made a prima facie showing of [retaliation], the burden of going forward shifts to the employer who must articulate a legitimate, non-[retaliatory] reason for the adverse employment decision. If the employer does produce evidence showing a legitimate, non-[retaliatory] reason for the discharge, the burden of production shifts back to the employee who must show that the employer's proffered explanation is incredible." It is important to note that the burden of proof remains on the plaintiff throughout this process.

*Zaffuto v. Wal–Mart Stores, Inc.*, 130 F. App'x 566, 569 (3d Cir. 2005) (quoting *Fleming*, 751 A.2d at 1041) (internal alterations omitted).

Here, Defendants aver that Plaintiff was terminated due to numerous problems with Plaintiff's general behavior at work, including but not limited to: inappropriate social interactions in the workplace, "mediocre" work performance, improper delegation of work duties, offensive conduct toward Selco's long term clients, and direct insubordination. (ECF 64-2, Defs. SOMF ¶¶ 7-59.) Additionally, Hutchinson was particularly affronted by Plaintiff's behavior immediately after Plaintiff sent the text message to Hutchinson on December 30, 2020.[9]

---

[9] Between December 30, 2020, and January 3, 2021, Plaintiff sent text messages and placed calls to coworkers saying that they needed to "get Pete" and that "[Pete's] gotta pay for this." (ECF 64-2, Defs. SOMF ¶¶ 98-103.) Plaintiff attempted to rally "all Selco employees against Hutchinson . . . and was spewing that Hutchinson gave everybody COVID." (*Id*. ¶ 99.) Specifically, Hutchinson received communications from five separate employees who

11

The plaintiff, "in order to survive summary judgment, must raise an issue of fact regarding whether the defendant's proffered explanation is pretextual or whether retaliatory discrimination was more likely than not a determinative factor in the decision." *McCullough v. City of Atlantic City*, 137 F.Supp.2d 557, 573 (D.N.J. 2001) (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). Further, in order "to survive a motion for summary judgment when the defendant offers a legitimate reason for its employment action," the plaintiff must "submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that [retaliation] was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 762. "The plaintiff cannot simply show that the employer's decision was wrong or mistaken but rather must demonstrate" that a reasonable factfinder could find the proffered legitimate reason to be "unworthy of credence, and hence infer that the employer did not act for the asserted non[-retaliatory] reasons." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 199 (3d Cir. 2015) (internal citations omitted). Ultimately, a plaintiff's burden of proof is to show by a preponderance of the evidence that his protected, whistleblowing activity was a substantial, determinative, or motivating factor in a defendant's decision to terminate his employment; in other words, that it made a difference. *Donofry*, 795 A.2d at 272. A plaintiff does need not prove that his whistleblowing activity was the sole factor considered in the decision to fire him. *Id.*

Here, Plaintiff contends that there is direct evidence of retaliatory intent and that Defendants have admitted to firing Plaintiff because of his text message. (ECF 65-1, Pl. Opp.

---

informed Hutchinson that they had received "alarming text messages and telephone calls" from Plaintiff. (*Id.* ¶ 106.) Hutchinson felt physically intimated by Plaintiff and felt concerned for his safety based upon Plaintiff's calls and texts to his coworkers. (*Id.* ¶¶ 110-11.) Thereafter, Hutchinson sought advice from several employees, including corporate counsel of the firm, and the decision was made to terminate Plaintiff as of January 7, 2021. (*Id.* ¶¶ 115-18.)

12

SOMF ¶¶ 169-70.) Plaintiff further avers that despite the numerous proffered reasons by Defendants for Plaintiff's termination, but for Plaintiff's text message to Hutchinson, he would not have been fired. (ECF 65, Pl. Opp. at 16; ECF 65-1, Pl. Opp. SOMF ¶ 168.) Indeed, Plaintiff concludes that this "undisputed direct evidence of retaliatory intent" shows that the whistleblowing activity was a determinative or substantial motivating factor in Defendants' decision to terminate Plaintiff's employment. (ECF 65, Pl. Opp. at 18; ECF 65-1, Pl. Opp. SOMF ¶¶ 170-71.)

Given the totality of the evidence, the Court finds that a reasonable finder of fact could conclude that Defendants possessed a retaliatory animus when terminating Plaintiff, and Defendants' proffered reasons for his termination (to the extent that they are considered legitimate and non-retaliatory) are unworthy of credence. Plaintiff has satisfied his burden of producing evidence from which a reasonable finder of fact could conclude that Defendants' reasons were pretextual and that retaliation actually animated the decision to fire Plaintiff.

### 3. CEPA Conclusion

In sum, as to Plaintiff's CEPA claim and the competing motions for summary judgment, there are material facts at issue. As discussed, the parties disagree on several elements of Plaintiff's CEPA cause of action: (1) whether Plaintiff held a reasonable belief that Hutchinson was violating a law, rule, or public policy; (2) whether Plaintiff engaged in whistleblowing activity; (3) whether Plaintiff has established causation; and (4) whether Defendants have presented legitimate reasons supporting termination of Plaintiff which are not pretext for retaliation. At this juncture, these are issues for the jury. Summary judgment is "rarely appropriate" in cases where the question is "why did the employer take an adverse employment action against plaintiff?" *Marzano*, 91 F.3d at 509. It is for the jury to decide at trial whether those actions were taken for a legitimate, non-retaliatory reason or as retaliation for Plaintiff's alleged whistle-blowing activity.

For the foregoing reasons, the Court **DENIES** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment as to Plaintiff's CEPA claim, Count I of the Complaint.

### B. NJWPL (Count II)

In Count II, Plaintiff asserts a claim under the New Jersey Wage Payment Law against Defendants. Plaintiff alleges that Defendants failed to pay his commissions that he earned prior to his termination. The New Jersey Wage Payment Law provides a private cause of action for failure to pay wages. *Mulford v. Comput. Leasing, Inc.,* 759 A.2d 887, 891 (N.J. Super. Ct. Law Div. 1999.) It is important to note that the NJWPL is a remedial statute and any exceptions as to what constitutes "wages" under the statutory definition are narrowly tailored, placing the burden of proof on the employer. *Jones v. Hesp Solar*, No. 20-13056, 2021 WL 1904734, at *4 (D.N.J. May 12, 2021) (quoting *Carita v. Mon Cheri Bridals, LLC*, No. 10-2517, 2012 WL 2401985, at *10 (D.N.J. June 25, 2012)).

#### 1. Commission as Wages under the NJWPL

The NJWPL defines "wages" as "the direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto." N.J. Stat. Ann. § 34:11–4.1. Defendants contend the commissions in question were "supplementary incentives" while Plaintiff argues these commissions fall under the umbrella of wages and that "courts routinely hold that sales commissions are wages under the NJWPL." (ECF 67-2, Pl. Cross MSJ at 20.) While an employer and an employee may refer to certain payments as "commissions," this is not dispositive. *See Sluka v. Landau Uniforms, Inc.,* 383 F. Supp. 2d 649, 656 (D.N.J. 2005) (finding

14

that payments were not commissions as defined under the Wage Act despite being called a commission in the employment contract). Rather, the Court should look to the purpose of the payment. As such, our threshold inquiry is a question of law – i.e., whether these payments are properly considered commissions or "supplementary incentives."

Here, Plaintiff contends the commissions in question are wages under the NJWPL because the commissions were "central" to Plaintiff's compensation package for the work he performed as a sales representative. (ECF 67-2, Pl. Cross MSJ at 21.) In supporting this argument, Plaintiff points to the language of his offer letter, which defines Plaintiff's compensation as "the annual rate of $100,000, plus the yearly commission schedule." (*Id*.) Defendants counter that Plaintiff's analysis is incorrect because Plaintiff's commissions were awarded only on sales within Plaintiff's assigned territory, excluding any house/legacy accounts, and commissions were paid after payment on the sale was "actually received." (ECF 68, Defs. Opp. at 20.) Further, Defendants rely on *Sluka* to support their proposition that the commissions here are not covered by the NJWPL because these payments were paid in addition to base salary and were designed to motivate and reward a salesperson. (*Id*. at 21-22.) Specifically, Defendants argue that like *Sluka*, the commissions here only regarded "new" sales generated by Plaintiff and did not apply to house or legacy accounts.[10] (*Id*.)

Defendants argue the payments in question are purely incentive based, but the Court is not persuaded. While Defendants allege the Wage Act claim in *Sluka* is analogous to Plaintiff's Wage Act claim, the facts in this case are considerably different than those in *Sluka*. In *Sluka*, the court found that two year-end payments were supplemental income, not commissions, because the

---

[10] Notably, however, the house/legacy accounts were not memorialized in writing; rather, Plaintiff and Hutchinson "went over them verbally." (ECF 67-5, Ex. A, Hutchinson Dep., 41:9-15.) Further, Defendants have not identified a single sale on which Plaintiff claims commissions that Defendants contend Plaintiff is not entitled to because it was designated as a "house/legacy account." (ECF 69, Pl. Rep. Cross MSJ at 9.)

15

payments were essentially bonuses, paid out all at once at the end of the year, in addition to Plaintiff's base salary and monthly commission.[11] *See Sluka*, 383 F. Supp. 2d at 656.

Here, the commissions in question were paid quarterly, as part of the "normal payroll practices" at a rate of "2% on All Sales generated." (*See* ECF 64-8, Ex. C.) These payments were central to Plaintiff's compensation package and, as a result, were not "supplementary incentives" excluded as wages under the statute. As such, the Court has determined as a matter of law that the quarterly commissions are in fact "wages" as defined under the NJWPL.

### a. Unpaid Commission Payments

Although Plaintiff has sufficiently alleged a NJWPL claim, this claim is limited. In his briefing, Plaintiff contends he is owed commissions on sales closed during his employment and on which Defendants were paid during Q4 2020 "before Plaintiff's termination." (ECF 67-2, Pl. Cross MSJ at 22-23.) Further, Plaintiff seeks payment of unpaid commissions on sales Plaintiff closed during his employment and on which Defendants were paid after January 1, 2021. (*Id.* at 24.)

Although the Court has determined that the payments at issue are in fact "wages" as defined under the Wage Act and Plaintiff's Wage Act claim can proceed to trial, this claim will be restricted to only those commissions earned by Plaintiff in Q4 of 2020. To determine whether a commission is owed under the NJWPL, the Court looks to the terms of the employment contract. *See Rocco v. Sears Holding Corp.*, No. 06- 2868, 2007 WL 9782711, at *2 (D.N.J. Mar. 29, 2007); *Feldman v. U.S. Sprint Comm. Co.*, 714 F. Supp. 727, 732 (D.N.J. 1989). Here, the signed offer letter and Schedule A dictate that "Commissions are paid at the end of fiscal year quarter after payment is

---

[11] There was no dispute in *Sluka* that Plaintiff's monthly commission on all sales was a "wage." 383 F. Supp. 2d at *6. Here, the commission at issue is a quarterly commission payment.

16

received. Must be employed by Selco/Hope to receive any owed commissions." (ECF 64-8, Ex. C.)

While the plain language of the offer letter and Schedule A controls, the record is unclear as to how much is owed for Q4 2020. Genuine issues of material fact exist as to how much Selco agreed to pay Plaintiff for his commissions,[12] which accounts would be subject to the "house/legacy designation" as per Schedule A of the offer letter, and which payments had been rendered from Plaintiff's respective clients prior to his termination from Selco.[13]

Plaintiff's employment ended with Selco on January 7, 2021. Moreover, Plaintiff was an at-will employee and has cited to no directly applicable law indicating that an at-will employee is entitled to wages or commissions after termination or resignation of employment. Therefore, in accordance with the plain language of Plaintiff's offer letter and Schedule A, Plaintiff's NJWPL claim will be limited to the unpaid commissions from sales made by Plaintiff and paid by the respective clients to Selco for the Q4 2020 commission cycle prior to Plaintiff's termination on January 7, 2021.

Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment and **GRANTS** Plaintiff's motion for summary judgment with respect to the limited issue of liability under Count II.

---

[12] Plaintiff contends that in October of 2020 Defendant Hutchinson agreed to raise his commission rate to 4% for the Capital Electric job, a "one plus million-dollar job." (ECF 67-7, Ex.C, Zeqo Dep., 68:24-69:13.)

[13] Defendants contend that Plaintiff fails to account for the fact that payment from the client must be received prior to payment of commissions. (ECF 68, Defs. Opp. at 24.) Indeed, Schedule A states in part: "Commissions are paid at end of fiscal year quarter after payment is received. Must be employed by Selco/Hope to receive any owed commissions." (ECF 64-8, Ex. C.) Further, to dispute the timing of payment, Defendants dispute commissions are "always" paid "one or two weeks after the actual end of the fiscal quarter, since [Plaintiff] began employment, and never on the actual last date." (ECF 68, Defs. Opp. at 24.)

C.  **CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF 64) is **DENIED** and Plaintiff's Cross Motion for Summary Judgment (ECF 67) is **GRANTED IN PART and DENIED IN PART**. An appropriate order follows.

                                                    */s/ Jamel K. Semper*
                                                    **HON. JAMEL K. SEMPER**
                                                    **United States District Judge**

Orig:    Clerk
cc:      James B. Clark, U.S.M.J.
           Parties